Next case is Carter v. OPM Carter v. OPM May it please the court, you are looking at, has he gotten everything he wants? No. What does he want? What he wants, your honor, is to be paid the LDO fee. Now we do receive that in 1990. But he already has agreed that he has been paid. His attorney signed that acknowledgement for him, saying I've been paid. What's he need more? When the court, the court said the attorney signed, I was talking about the pre-hearing comments. Okay, well just tell me what you think Mr. Carter needs that he has not received. At this point Mr. Carter needs to be paid the LDO from 1990 to 1998 when they make the compensation. The record indicates that he has been paid that consistently from the outset. He has always been an LDO and has always been given that particular benefit. What is incorrect about that record? That is the problem with the case. Throughout the appeals and the petitions that have been filed by the appellants, he has contended throughout that he did not receive that LDO credit. In fact, during the hearing, on the designation of the record presented to the court, he requested a hearing. He submitted a list of witnesses that he intended to have with the regulations to prove that he in fact did not get it. The court's relying on hearsay documents that were prepared some eight years after- The difficulty I'm having is this case has a history. He came without counsel once and he never gave anyone an answer to this question. The question of why he thinks there's a problem with the computation. So they dismissed it the first time because they figured they'll give him another chance to get a lawyer to make him, help him come up with an explanation. So he had a chance without a lawyer and there was nothing he could put forward other than a bald claim that he thinks they were wrong. But they had a pre-hearing conference which he participated in in the first instance and he couldn't come up with anything. So they let him go and get a lawyer and now he had a lawyer and he again is unhappy with what his lawyer did. And it just seems to me he had a chance to do this. He had a chance in the first instance to come up with some representation on his own without his lawyer being involved. Who's a conduct you're complaining about now. And he never took advantage of it. So it's, I understand the question Judge Rader has is what more does he want that he has, what opportunity does he want that he hasn't already had? What he has not had is a hearing. He has not had an opportunity to present evidence to show what in fact he should have received. There has been informal pre-conference hearings discussing it and somehow there was something magical said by OPM to his former counsel that made him concede that yes this should be dismissed. Though the pre-hearing submissions indicated there are host of witnesses to show that these documents that they're relying on, none of them pre-printed, forms close to the time that these determinations were made, that they were in fact accurate. There is no evidence in the record to show that he in fact received it. There are letters saying he received it. There's a pre-trial conference, right? Yes. And they go to the pre-trial conference and they narrow all the issues down to whether or not he received LAO credit for some work he did at Fort Hayden, Forest Hayden. And even after discussing that, they even sign an agreement that that is correctly computed by the government. I'm still searching for, he's had a conference, his attorney representing the authority to sign for him has said there's no problem. We can tell, first of all, that the attorney had no apparent authority to in fact consent to a dismissal of this case. The record has at least 13 documents where the public is indicating I never received the LAO credit. On what basis do you say his attorney didn't have authority to act on it? I mean, he signed the designation of record. And the designation of record specifically requested hearing. That did not take place. And so it limited his authority to in fact settle without a hearing on this matter. And not only that, Your Honor, if you look at at least seven of the evidentiary documents. But doesn't it say, doesn't that form say any limitation on the representative settlement authority must be filed in writing by the board? So he files, he signs a form essentially saying that this person has authority to settle the case for him. So you're saying that just because he also asked for a hearing on this form, that limited the ability of the attorney to do that? Yes, Your Honor. In fact, I modified the document and had it typed in. The court, the law, I mean the law in this jurisdiction pretty much says you have to have express authority. And to be able to take that designation of record and say that expressly authorizes him to settle on an issue that he's contested. And that his pre-hearing submissions clearly say he's contested. Tell you what, Your Honor. Without consulting. Tell you what, Your Honor. I will give you a chance you'd never have in another felon's body. Tell us the mistake that was made. Your Honor, in looking at the documents, if I may bring up the book right now. Just tell us. Well, if you look at the statement of pension payments and look at the calculations and compare them. Try to reconcile that. They did one letter where they talked about $29,000 in salary. There's no reconciliation between what he received each year from 1990 to 1995 to show what he was in fact supposed to receive. They only did one letter saying in 1990 he should have gotten $29,000. If you compare that to his pension statement, it's like $27,000. It's like $3,000 difference less than what the reconciliation, I'm sorry, what the stated amount was. So it is that. But they said that he was getting $27,000 a year and he was not getting $27,000 a year. Is that what they said? Basically what they said was that in 1990 he should have gotten $29,993. And the pension statement shows about $27,000 or $26,000. And he posed, there's a letter in the records that says, he poses to them, why is it that it's less than what was stated in the letter? And all this was covered in detail in the hearing with the attorney, right? And at the conclusion of that, the attorney signed the statement saying, you're right. You showed me that he was giving me no credit. Your Honor, I would pretend that we can't say whether it was covered or not because the record does not specifically address what was covered. They said they covered one letter. There are, in fact, seven documents in the record that deal with what he should have been giving, what he might have gotten, what they recalculated in 1998. There is nothing close, there's no document from 1990 that was produced by the agency from 1990, 1991, 1992, 1993, 1994, 1995 on, close to the proximity of when the determination was supposed to have been made. So to use a hearsay document prepared eight years- Well, let me ask you, so you told us about 1990, that you contend there's some discrepancy of $3,000. Is that just 1990, or do you have evidence showing that there's the same discrepancy for every year up until 1998? I'm just trying to find out. Your Honor, there is no record that's been prepared by OPM to show what he should have been receiving based on any calculations for the following years. But the amounts- So the calculations for 1998 and 1990 didn't cover any of those? That's correct. And the amounts he received those five years was less than the amount that was calculated for 1990. How much was? A couple thousand dollars. So we don't know if it had been calculated for each year. It may very well have been higher, 29 the first year, 30 the second, but they only did one calculation to give an example of what he should have been getting. So we don't have any pre-printed supporting documents prepared in an ordinary course of business to substantiate what he should have been getting each year. And that's been the contention. He has no way of verifying that he got it. That's what they say in written letters. And that's three years from 1990 to 1998? That's correct. I'm sorry, did I answer the question correctly? Yes. Okay. So the contention was hearsay, it was not based upon appropriate evidence, and that counsel, there was nothing in the record that gave him the express authority to, in fact, dismiss this case. How long is that? Is my time up? You're in for your rebuttal time if you want to stay longer. Okay, I'll stay. Okay, thank you. Ms. Connelly? Good morning. May it please the court. This court should affirm the decision of the Merit Systems Protection Board dismissing Mr. Carter's petition as moot. We do not dispute that Mr. Carter is entitled to only own credit. Our argument is that he is already getting these benefits, and his former attorney understood this, and thus asked the MSPB to dismiss his case as moot. Okay, we've been through that. What about their allegation that there's some computational error for at least one year? Actually, if the court would bear with me, I can walk you through the calculations that show, I can quickly walk you through the calculations that show that Mr. Carter is getting LEO credit. There are two pages attached to the appendix of Mr. Carter's brief. If you'll look at pages 44 and pages 21 of the appendix. 44 and 21? I'm sorry, 221. 44 and 21. Starting with page 221 of the appendix. Yes. What we have here is a document by OPM which lists the gross monthly rate of Mr. Carter's annuity computed with LEO credit in the second column. In the first column, you'll see its effective date of rate change. The reason why the rate is changing there is because cost of living adjustments are being calculated. If we look at the first date, December 1st, 1990, Mr. Carter's LEO annuity is $2,047. Now, one thing to keep in mind is that the rate change, even though it's effective on December 1st, 1990, it will not go into effect until next year's payment. Now, just to show you where the numbers for the gross monthly rate come into play, look at December 1st, 1997. The monthly rate there is $2,481. OPM did a calculation for Mr. Carter comparing what his annuity would be without LEO credit and with LEO credit. Ms. Outlaw is correct that they did not do it for all of the 10 years, but they did it for one year to give him an example, and they did it on a worksheet. And that can be found in the same appendix, starting on page 32. If you look on page 32, this is a computation of Mr. Carter's annuity for 1997, where there is no LEO credit. If you look at the next page, on page 33, without LEO credit, under number 9, his monthly annuity would be $2,008. Going on to the next page, number 34, page 34, this is a computation of his annuity with LEO credit. And if you go on to page 35, you'll see under number 9, with LEO credit, his monthly annuity is $2,481. Comparing that back to page 221 of the appendix, you see a monthly rate of $2,481. Now, to show that Mr. Carter was getting the LEO credit annuity reflected on page 221, all you need to do is do the math. If you turn back to page 44, you'll see statements of annuity paid to Mr. Carter for 1992, 1993, 1995. On the next page is a statement for 1994. Are you representing to us that if we multiply each of the numbers on page 221 by 12, that will correspond to the amount that he got for the rest of the month? Yes, but the one thing to keep in mind is to make sure that you look at the effective date of the rate changes, because it doesn't always happen at the beginning of the year. So sometimes what you'll have to do is take the 1995 rate for January, February, March, and then when the COLA takes into effect, then you take the new COLA rate and then times it by the rest of the month. It will equal the amount that he received in 1993 and 1995. And those dates are reflected in this chart. Yes. So if you just follow this chart, we can figure it out. Now, is there a COLA, the reason that it varies, is it like, is it subject, is this by statute that they're subject to an increase in COLA every year and sometimes it gets delayed and sometimes it doesn't? Yes, exactly, Your Honor. The one thing to point out, and this may also explain why there is some confusion as to whether or not Mr. Carter is getting LAO credit, is that if you look on page 44, the statement of annuity for 1992, Mr. Carter took a lump sum payment that year. I know it's hard to read, but at the bonnet it states this amount includes an 18,000, and I believe that number is? 343. Yes, an $18,343 lump sum payment. Because he took that lump sum payment, his annuities then decreased by $1,000. The other thing to keep in mind is? I don't understand that line. So he didn't get when the 92 amount was not 21.85 if you account for the month differences and whatever, because it's down 1,000 because? Well, in 1992 he actually, if you see the statement of annuity, he got $46,090. And the reason for that is because he elected to take some of his future annuity as a lump sum, which he can do. When you take some of your future annuity as a lump sum, does that decrease the percentages in the future year? Yes, it will decrease the amount in the future year. So you're kind of borrowing on the money that you're going to get in the future. And in Mr. Carter's case, it cut his annuity by $1,000. If he had not taken that lump sum payment, his annuity currently would be about $3,026. Do you think that's what led to the confusion here? What? I mean, I'm not asking you to speculate, but I'm just saying is that what, you know, if you've been in any of the conferences with him, is that what was confusing Mr. Carter? I think that could have been one of the things. The other thing that could have been confusing is that Mr. Carter's position became designated to receive LEO credit in 1994, so four years after he retired and began receiving his annuity. When the agency went back to change his annuity and to give him LEO credit, they realized that they had already been giving him LEO credit, even though he had not deserved it. So there was no change, and that's what happened. And they notified him of all of this at some point? Yes, I believe so. It should be in the letters that are attached to this opinion. And there was no effort to recover the amount that was overcharged? There was no amount. I don't believe there was an amount overcharged to him because it— Overpaid, meaning that if he was not eligible for LEO at some period of time when he was paid it, was there an overcharge, an overpayment to him? I'm not sure, Your Honor. I'm not sure whether because his position was changed later on—you know, I don't believe there was an overpayment to him because when his position was converted to receive LEO credit in 1994, the letter from OPM stated that they were going to go back and retroactively change his annuity from prior years. And then when they went back to look at it, they realized they had already mistakenly been giving him LEO credit. What about his helpless argument, as I understand it, that on this designation of representative form, somehow the representations made with respect to the attorney's authority to settle the appeal was limited and constrained by the typed-in statement that he requests a hearing? We disagree with that, Your Honor. If you look at the designation of representative form, the typed-in statement just says, you know, that we—that Mr. Carter requests a hearing. It does not state that his settlement authority is limited or that he must participate in a hearing or that his authority is only limited to representing him at the hearing. It just states that we request a hearing, which is actually what Mr. Carter's former attorney did. He did request a hearing, and the hearing was scheduled. The hearing was simply canceled after the pre-hearing conference. There was a discussion, and his attorney understood that Mr. Carter was already receiving the benefits that he was asking for. And then he asked the MSPB to dismiss his case as moved. Just one last thing, Your Honor. The change in Mr. Carter's LEO status to show that the agency did, in fact, change his status is reflected on a personnel action form on page 23 of the appendix attached to the government's brief. Under that document— Of the government's brief, I don't see page 24. Page 23 of the appendix, the supplemental appendix attached to the government's brief. You'll see that there, under the remarks section at the bottom, there is a notation that states that this personnel action corrects Item 29, Retirement Code, from 0-1 on all personnel actions retroactive to January 1975. And so you'll see that from this personnel action form that Mr. Carter's retirement LEO status was, in fact, changed. And it wasn't changed back to 1990 because it had already been that way? That's correct, Your Honor. For these reasons, the court should affirm the MSPB's dismissal of Mr. Carter's petition as moved. Thank you, Ms. McFarland. Ms. Alba. Your Honor, we invite the court to the statute of calculations. Because for 1992, it includes a lump sum payment, so you can't compute that to determine how that fits into the $46,000. And then for 1993, there is no listing on page 221 for that year. And then for 1995, if you calculate times 12 of 23, it's going to come out to be $29,000 instead of the $27,000 that he has here. Well, no, but I think government counsel explained quite clearly that there is a discrepancy, and the discrepancy in calculations is based on the effective date, which is 3-1-95. Plus his taking of a lump sum payment, which would decrease things downstream. So when you're saying it's not reflected if you do the calculations, I haven't done the calculations, so I don't know if they're right. But it seems like if you factored in that the rate that they list for 95 was effective in March and not in January, because it strikes me that it is, the numbers do work. Your Honor, that's just the problem. We have counsel offering an explanation as to how this has arrived, but no evidential documentation to support it. But we've got these documents right in front of us. Your Honor, there's no documents to show how they will come up. While he's getting $27,450 in 1995, rather than 20, as the figure shows on here, $29,636. There is not one document in this record to show how that was computed that year. Well, have you taken into account the effective dates? Yes. If you take it just what counsel representative to you that if you do the calculations, it will match the 50%. And she also explained that there's a lump sum payment you have to take into consideration. You have to weigh in effective dates which delay the implementation by several months in various instances. Have you accounted for all of that? As the court is aware, counsel's arguments are not evidence. There's no evidence in the record that the agency relied on, the board relied on. The court was very impressed with Ms. McConnelly's grasp of the record. And I'm wondering if you have accounted for the effective dates. Your Honor, she spoke to me about that, and that is the problem. They're asking the appellant to do the work. They're asking the appellant to, this is what we did. We have no documentation in the file, in the record to support this is what we did. But we're saying that we deducted $1,000 each year, and we're saying that it's reduced for various reasons. But there is nothing in the record to support how these computations. She conceded that they did it for one year. So we're just speculating. Are you disputing anything on page 221? Are you, I mean, so you're taking that as a gift? Correct. Your Honor, we don't know. We don't know. This document was prepared. Your Honor, this document was prepared in 1999. Okay. Your Honor, we have no way of knowing if any of these figures actually, what we're certain about is what he got for the pension statement, because that's what he received. Right. Everything else has been reduced by the government nine years later and eight years later without any supporting documentation from the record. We cannot be, we're saying it's hearsay, and that there's enough conflicts in the record. The three hearing submissions had two witnesses who worked with the agency who would testify that they found they did make an error in their calculations, and the LEO credit. He was prepared to show that. So we contend that to take counsel's explanation when the record doesn't support it, it's erroneous. Where's the lack of support from the record? That's what we're struggling with. Your Honor, okay, again, I will state the pension statements are not consistent with, which is page 44 and 45, are not consistent with page 221. Counsel offered page 31. This document, in fact- Have you done these calculations by taking two months of the 94 rate and then ten months of the 95 rate? Your Honor, are you talking about- I come after the same figure, almost the same figure, but then a few dollars. Then, Your Honor, if we're coming to, if it's not the same and it's a few dollars, it's still not accurate. It's a new thing. How can we trust the inaccuracies? That is the question. We need to have evidence- But you're not coming here and saying we owe the government money and that's what our case is. I mean, you know, every federal employee gets some sort of paid pension. They don't all have the right to file with the MSPB and say the government has to come and we have a case against you and you've got to prove to our satisfaction that all of these calculations are correct without coming in with some basis for showing that they're not. And, Your Honor, we're indicating he was precluded from doing that by not having a hearing and that the attorney was, in fact, in error to accept an explanation without hearing and that the agency did not have enough in the record to dismiss this case. So we'd ask that it be resubmitted for hearing. Thank you.